## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEWIS D. BAKER, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : COMPLAINT FOR VIOLATION OF THE |
| STRONGBRIDGE BIOPHARMA PLC, | : SECURITIES EXCHANGE ACT OF 1934 |
| GARHENG KONG, DAVID GILL, JOHN H. | : |
| JOHNSON, JEFFREY W. SHERMAN, | : |
| MÅRTEN STEEN, and HILDE H. | : |
| STEINEGER, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On May 24, 2021, Strongbridge Biopharma plc ("Strongbridge" or the "Company") entered into a transaction agreement (the "Agreement") with Xeris Pharmaceuticals, Inc. ("Parent"), Xeris Biopharma Holdings, Inc. ("Holdco"), and Wells MergerSub, Inc. ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Agreement, Strongbridge's stockholders will receive 0.7840 shares of Holdco stock and one contingent value right ("CVR") per share.

3. On July 29, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Strongbridge common stock.

9. Defendant Strongbridge is a public limited company incorporated in Ireland. Strongbridge's common stock is traded on the NASDAQ under the ticker symbol "SBBP."

10. Defendant Garheng Kong is Chairman of the Board of Directors of Strongbridge (the "Board").

11. Defendant David Gill is a member of the Board

12. Defendant John H. Johnson is Chief Executive Officer and a member of the Board.

13. Defendant Jeffrey W. Sherman is a member of the Board.

14. Defendant Mårten Steen is a member of the Board.

15. Defendant Hilde H. Steineger is a member of the Board.

16. Defendants identified in ¶¶ 10-15 are referred to herein as the "Individual

Defendants."

## SUBSTANTIVE ALLEGATIONS

17. The Company is a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs.

18. On May 24, 2021, Strongbridge entered into the Agreement.

19. The press release announcing the Proposed Merger provides as follows:

Xeris Pharmaceuticals, Inc. (Nasdaq: XERS), a pharmaceutical company leveraging its novel formulation technology platforms to develop and commercialize ready-to-use injectable drug formulations, and Strongbridge Biopharma plc (Nasdaq: SBBP), a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs, today announced that they have entered into a definitive agreement under which Xeris will acquire Strongbridge for stock and contingent value rights ("CVRs"). The agreement, including the maximum aggregate amount payable under the CVRs, values Strongbridge at approximately $267 million based on the closing price of Xeris Shares of $3.47 on May 21, 2021 and Strongbridge's fully diluted share capital. The transaction, which has been unanimously approved by the boards of directors of both companies, with the exception of Jeffrey W. Sherman, M.D., a director in common to both companies, who abstained from the voting, is expected to close early in the fourth quarter of 2021, subject to the satisfaction of closing conditions. Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under a new entity to be called Xeris Biopharma Holdings, Inc. ("Xeris Biopharma Holdings").

Under the terms of the agreement, at closing, Strongbridge Shareholders will receive a fixed exchange ratio of 0.7840 Xeris Biopharma Holdings Shares for each Strongbridge Share they own. Based on the closing price of Xeris Shares on May 21, 2021, this represents approximately $2.72 per Strongbridge Share and a 12.9% premium to the closing price of Strongbridge Shares on May 21, 2021. Strongbridge Shareholders will also receive 1 non-tradeable CVR for each Strongbridge Share they own, worth up to an additional $1.00 payable in cash or Xeris Biopharma Holdings Shares (at Xeris Biopharma Holdings' election) upon achievement of the following triggering events: (i) the listing of at least one issued patent for KEVEYIS® in the U.S. Food & Drug Administration's Orange Book by the end of 2023 or at least $40 million in KEVEYIS® annual net sales in 2023 ($0.25 per Strongbridge Share), (ii) achievement of at least $40 million in RECORLEV® annual net sales in 2023 ($0.25 per Strongbridge Share), and (iii) achievement of at least $80 million in RECORLEV® annual net sales in 2024 ($0.50 per Strongbridge Share). The minimum payment on the CVR is zero and the

maximum payment is $1.00 in cash or Xeris Biopharma Holdings Shares at Xeris Biopharma Holdings' election.

Upon close of the transaction, current Xeris Shareholders are expected to own approximately 60% of the combined company, while current Strongbridge Shareholders are expected to own approximately 40%.

"This is a very compelling transaction that will create a scalable and diversified biopharmaceutical company increasingly oriented toward more specialty and rare disease products, positioning us for long-term product development and commercial success," said Paul R. Edick, Chairman and Chief Executive Officer of Xeris. "Strongbridge's attractive rare disease portfolio and capabilities are highly complementary with Xeris. Building on the continuing prescription growth of Gvoke® with an enhanced and diversified growth profile, expanded and scalable salesforce, and expected cost-synergies, the combined company will be well positioned to deliver compelling long-term value to shareholders. We look forward to welcoming the Strongbridge team to Xeris and leveraging our differentiated portfolios and technologies to help the patients we serve improve their quality of life."

"We are excited to combine with Xeris to drive the next phase of our growth," said John H. Johnson, Chief Executive Officer of Strongbridge. "Strongbridge has made significant progress advancing its portfolio of therapies for rare endocrine and rare neuromuscular diseases with focus, commitment and passion for the patients and physicians that we serve. This includes delivering strong revenue growth for KEVEYIS® (dichlorphenamide), our first commercial, rare neuromuscular product, and the successful development of RECORLEV® (levoketoconazole), which is under review for approval by the FDA with expected commercialization in the first quarter of 2022 pending FDA approval. Through this combination with Xeris, we will gain additional scale and financial resources to better meet the unmet needs of those we serve. Our combined pipeline, drug development talent and commercial infrastructure will enable us to accelerate product launches and drive further growth. We look forward to working closely with the Xeris team to unlock the potential value of our combined assets, while providing our shareholders with the opportunity to participate in the success of the combined company."

**Strategic Rationale and Financial Benefits of the Transaction**

The combination of Xeris and Strongbridge is expected to deliver compelling strategic and financial benefits including:

**Diversified and Increased Revenue Growth.** The combined company is expected to have a stronger revenue base with two rapidly growing commercial assets in Gvoke® and KEVEYIS®, and a near-term product launch in RECORLEV®. Gvoke® sells in a multi-billion dollar addressable market, as will RECORLEV®, if approved. With approval of RECORLEV® by the FDA, Xeris' experienced, endocrinology-focused commercial infrastructure is expected to enable a rapid

product launch for RECORLEV® into the endocrinology community. With Gvoke®, KEVEYIS® and RECORLEV®, the combined company will boast multiple, highly differentiated, growing, commercial assets that could have significant combined revenue potential, supported by a larger and more efficient commercial organization.

**Significant Potential Synergies.** The combined company is expected to generate approximately $50 million in pre-tax synergies by the end of 2022 resulting from immediate savings, including redundant general, administrative and other public company costs, and from the avoidance of future costs, most notably within the commercial and medical affairs functions. Shareholders of the combined company are expected to benefit from significant cost avoidance and the potential for more rapid and achievable near-term growth by utilizing Xeris' existing commercial infrastructure to launch RECORLEV® soon after product approval. Xeris' management and the Independent Xeris Directors are committed to retaining and incentivizing the most talented individuals in their respective functions between the two companies to ensure continuity and ongoing success.

**Specialized Commercial Platform.** The combined company will have a robust rare disease and endocrinology-focused commercial infrastructure, primed to bring the benefits of the company's products to a wider range of patients with unmet needs. At closing, the organization will have approximately 110 field sales representatives, as well as 50 inside sales and support employees, and a fully operational patient and provider support team, enabling a rapid potential product launch for RECORLEV® in the first quarter of 2022, as well as enhanced sales across the entire portfolio.

**Expanded Development Pipeline.** In addition to RECORLEV®, the combined company will have a robust pipeline of development programs to extend the current marketed products into important new indications and uses, and bring new products forward using its formulation technology platforms, supporting long-term product development and commercial success.

**Strengthened Strategic Profile.** This transaction will enable the combined company to have a scalable infrastructure for continued development of specialist oriented and rare disease products from its proprietary XeriSol™ and XeriJect™ formulation technologies, as well as consolidation of commercial and late development-stage products and companies focused on endocrinology and rare diseases.

**Improved Access to Capital Markets.** With enhanced scale, multiple revenue generating commercial assets and a high potential value near-term development pipeline, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the debt and equity markets at a lower cost of capital.

**Closing**

Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under Xeris Biopharma Holdings, which will be incorporated in Delaware and will continue to have its principal executive offices in Chicago, Il. On close, Xeris shareholders will exchange each Xeris Share they own for 1 Xeris Biopharma Holdings Share.

Xeris Chairman and CEO, Paul Edick will act as Chairman and Chief Executive Officer of Xeris Biopharma Holdings. The Xeris Biopharma Holdings board will comprise the other existing Xeris Directors, together with John Johnson and Garheng Kong, M.D., PhD, MBA who will join the combined company's board as new independent directors. A director in common to both companies, Jeffrey W. Sherman, M.D., will continue to serve on the Xeris Biopharma Holdings board following the transaction.

Xeris Biopharma Holdings Shares are expected to trade on the Nasdaq Global Select Market ("Nasdaq") under the ticker XERS.

The transaction is expected to close early in the fourth quarter of 2021, subject to the Conditions set out in Appendix III of this announcement, including approval by Xeris Shareholders and Strongbridge Shareholders.

In addition, certain Strongbridge Directors, executive officers, CAM Capital and HealthCap VI, L.P., representing, in aggregate, approximately 17% of Strongbridge's outstanding ordinary shares, have entered into irrevocable undertakings to vote in favor of the transaction.

**Advisors**

SVB Leerink LLC is acting as financial advisor to Xeris, and Goodwin Procter LLP and A&L Goodbody LLP are serving as legal counsel. MTS Health Partners, LP is acting as financial advisor to Strongbridge, and Skadden, Arps, Slate, Meagher & Flom, LLP and Arthur Cox LLP are serving as legal counsel.

20.     On July 29, 2021, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

21.     The Proxy fails to disclose material information regarding Strongbridge's financial projections.

22.     The Proxy fails to quantify the "internal assumptions prepared by Strongbridge management" underlying the "April 8 Strongbridge Projections" and the "Strongbridge

Management Projections," including the internal assumptions.

23. The Proxy fails to identify the investment bank that produced the equity report underlying the development of the "Strongbridge April 8 Xeris Projections."

Financial Analyses

24. The Proxy fails to disclose material information regarding the financial analyses conducted by MTS Health Partners, LP ("MTS"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

25. Regarding MTS's Discounted Cash Flow Analysis of Strongbridge, the Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rates; and (ii) MTS's basis for assuming no terminal value.

26. Regarding MTS's Public Trading Comparable Companies Analysis of Strongbridge, the Proxy fails to disclose the individual multiples for the observed companies.

27. Regarding MTS's Precedent M&A Transaction Analysis, the Proxy fails to disclose the individual multiples for the observed transactions.

28. Regarding MTS's Discounted Cash Flow Analysis of Xeris, the Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rates; and (ii) MTS's basis for assuming no terminal value.

29. Regarding MTS's Public Trading Comparable Companies Analysis of Xeris, the Proxy fails to disclose the individual multiples for the observed companies.

Background of the Proposed Merger

30. The Proxy fails to disclose whether the confidentiality agreement the Company entered into with "Party B," which contains a standstill provision that is effective until January 2022, is a "don't-ask, don't-waive" standstill provision that is presently precluding Party B from submitting a topping bid for the Company.

## COUNT I

**Claim Against the Individual Defendants and Strongbridge for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

31. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

32. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

33. Strongbridge is liable as the issuer of these statements.

34. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

35. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

37. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

38. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

39. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

40. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

41. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Strongbridge within the meaning of Section 20(a) of the Exchange Act as alleged herein.

43. Due to their positions as officers and/or directors of Strongbridge and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to

control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

46. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

47. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

49. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

50. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for

attorneys' and experts' fees; and

    F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: August 27, 2021

**GRABAR LAW OFFICE**

By: *[signature]*
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*